UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALEXANDER J. MOLNAR,

              Petitioner,         **DECISION AND ORDER**
                                                                      No. 03-CV-0493(VEB)
     -vs-

THOMAS POOLE, Superintendent, Five
Points Correctional Facility,

              Respondent.
_____

## INTRODUCTION

Petitioner, Alexander Molnar ("Molnar"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his June 25, 2000 conviction in New York State Supreme Court (Erie County) on one count of second degree (depraved indifference) murder for which he was sentenced to twenty-five years to life in prison. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 2254.

## DISCUSSION

Petitioner Molnar raises only one claim in support of his habeas petition: his conviction was "obtained by evidence discovered pursuant to an unconstitutional search and seizure in violation of U.S. Const. 4th and 14th Amends." Petition at ¶22(A) (Docket No. 1). There is no dispute that the police entered Molnar's apartment without a warrant, where they discovered the corpse of a woman in an extremely advanced state of decay; this was the woman whom Molnar

was alleged to have murdered.[1]

Defense counsel moved to suppress this evidence arguing, *inter alia*, that as a matter of law, there was no "emergency," considering that the police allowed an hour to go by before they decided to break in. Following a hearing, the Supreme Court (Buscaglia, J.) denied the motion, holding in relevant part that when the police entered the apartment they were acting as community caretakers–not as criminal investigators–and that the situation facing them presented an emergency "concerning the health and welfare of" all the tenants in the building.

On direct appeal, a four-justice majority of the Appellate Division held that the trial court properly determined that "the warrantless entry into defendant's apartment by the police in response to a foul odor emanating from it was justified under the emergency exception to the search warrant requirement[.]" *People v. Molnar*, 288 A.D.2d 911, 732 N.Y.S.2d 788, 789 (App. Div. 4th Dept. 2001) (citations omitted).[2] One justice dissented, stating that in his opinion, the

---

[1] When questioned by the police, Molnar stated that he had met the victim on the street and they had gone to his apartment where they had smoked crack cocaine and had sex. According to Molnar, at some point the victim "got all crazy" and "freaked out." He recalled that the victim hit him, which caused him to have "lightning flashes" and to "hear[ ] echoes." Molnar did not recall what happened after he was hit, other than that he left the apartment and returned "sober" the next morning. Upon entering the apartment, Molnar discovered the lifeless woman lying on the floor, and he decided to put her in the closet. Molnar later brought his friend Patrick Lee ("Lee") to the apartment and showed him the decomposed body; Molnar attempted to pull her out by the hair, but her scalp came off in the process. When asked by a detective, Molnar stated that he could not remember if he hit, strangled, or killed the victim. (The victim's maxillary bone, nose and left facial bone had been broken by blunt force trauma and she had died from being strangled with her brassiere.)

Lee subsequently testified for the prosecution that after Molnar showed him the body, he asked Molnar what he had done. Molnar said that he and the victim had been smoking crack and having sex when they got into an argument. Molnar then hit the woman in the face with a hammer, causing her to go into convulsions. Lee stated that Molnar then strangled the woman to stop her from "bouncing around." According to Lee, Molnar told him that he (Molnar) had sex with the woman after he killed her. Lee did not go to the police after being shown the dead body.

[2] "A tenant in the building called 911 to report a foul odor coming from the apartment below her apartment. Police officers responding to the call detected a foul odor unlike anything they had previously experienced, which necessitated the use of charcoal masks. Although the officers did not immediately recognize the odor as that of a decomposing body, their actions were consistent with the perception of an emergency. They spoke to other tenants, contacted maintenance and tried to communicate with the tenant of the subject apartment. They learned that the tenant had not been seen and that previous attempts to contact the tenant had been unsuccessful. They further learned that the odor had been pervasive throughout the apartment building for at least two days and was so foul that at least

"most fundamental element of the [emergency] exception"–that the police "have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property"–was not met under the circumstances of this case.[3] Leave to appeal to the New York Court of Appeals was granted.

The Court of Appeals rejected Molnar's argument that, as a matter of law, there was no emergency, and that the police could have and should have obtained a search warrant. The Court of Appeals found it significant that Molnar did not indicate what such a warrant would entail, and when asked at oral argument, appellate counsel could offer no suggestion as to naming the crime involved or, as required by the Fourth Amendment, "the things to be seized." According to the Court of Appeals, that was "the core problem" with defendant's position. Before entering the apartment, the police encountered no evidence of any crime, and the circumstances did not lend themselves to criminal processes. Thus, "[t]he police were not functioning in a criminal arena, but acting as public servants in the name of protecting public health and safety . . . [and] proceeded with restraint and took the time to deliberate, using force only after exhausting other reasonable avenues." *People v. Molnar*, 98 N.Y.2d 328, 774 N.E.2d 738, 746 N.Y.S.2d 673, 677

---

one tenant in the building had to spend the previous night elsewhere. At that point, they forcibly entered the apartment to discover the source of the odor and to render aid if necessary. They traced the odor to a closet, where a decomposing body was found. We conclude that 'the very uncertainty created by the totality of circumstances created a justification and need for the police to take immediate action[.]' . . . It was the duty of the police here to resolve the source of the noxious odor 'suggesting harm' to the person or persons inside defendant's apartment[.]" *People v. Molnar*, 288 A.D.2d 911, 732 N.Y.S.2d at 789 (citations, quotations and internal citations omitted).

[3] The dissenting justice stated that "there was no emergency or immediate need for action by the police. The officer who responded to the 911 call recognized the odor emanating from defendant's apartment only as 'something rotten.' She was not aware of any prior police calls to the apartment or reports of loud noises, calls for help or missing persons[.] . . . Nor was there testimony at the suppression hearing that the officer believed that there was anything about the odor 'suggesting harm to persons' inside the apartment[.] . . . The sole basis for the warrantless entry into defendant's apartment was an unidentified foul odor. An unidentified foul odor simply does not support a reasonable belief that an emergency exists or that anyone is in immediate need of police assistance[.]" *People v. Molnar*, 288 A.D.2d 911, 732 N.Y.S.2d at 790 (Green, J., dissenting) (citations omitted).

(N.Y. 2002); *see also id.* at 676 ("The Fourth Amendment's warrant requirement was not meant to apply to situations where police reasonably need to enter a premises for a legitimate, benevolent purpose distinct from crime-fighting.").

The Court of Appeals also rejected Molnar's assertion that, as a matter of law, the passage of an hour negated the existence of an emergency. *Id.* ("Defining an emergency with the rigidity defendant proposes may encourage police–so as to give their actions the appearance of an emergency–to break in prematurely, before exhausting other reasonable means of gaining access."). Notably, the Court of Appeals found that Molnar conceded "a public official would have been required to enter the apartment at some point, regardless of whether that official could obtain a warrant"; the Court of Appeals found no basis in law for such a distinction. Finally, the Court of Appeals noted that inasmuch as the lower courts' determination that exigent circumstances existed to justify the warrantless entry into defendant's apartment involved a mixed question of law and fact having support in the record, any further review was beyond its jurisdiction.

Respondent argues that Molnar's petition for habeas relief must be dismissed because the sole claim raised herein–which is premised on a violation of Molnar's Fourth Amendment rights– is not cognizable on Federal habeas review. *See* Respondent's Memorandum of Law at 4 (Docket No. 7). As respondent correctly notes, in *Stone v. Powell*, the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 481-82 (1976) (emphasis added). Following *Stone v.*

*Powell*, the Second Circuit developed a "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims." *Capellan v. Riley*, 975 F.2d 67, 69-71 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978)). "'[A]ll that the [Supreme] Court required [in *Stone*] was that the state [ ] provide[ ] the *opportunity* to the state prisoner for a full and fair litigation of the Fourth Amendment claim . . . .'" *Id.* (quoting *Gates*, 568 F.2d at 839) (emphasis in original). The Second Circuit concluded that review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances: (a) if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown in the underlying process." *Id.* (quoting *Gates*, 568 F.2d 840 and citing *McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir. 1983)). Notably, all that must be shown is that the State has provided an opportunity to litigate the petitioner's Fourth Amendment claim; it matters not whether the petitioner actually "took advantage of the State's procedure." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). In fact, as the Second Circuit has noted, "the 'federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.'" *Capellan*, 975 F.2d at 70 n.1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing *Gates*, 568 F.2d at 837 & n. 4; *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

   Here, Molnar does not contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim. Indeed, Molnar actually took advantage of New

York's procedure for litigating his Fourth Amendment claim, raising it before the trial court at a suppression hearing and then pursuing it on direct appeal. His claim was heard both by the intermediate appellate court and by the highest appellate court in the State.

Moreover, Molnar has not made any allegations that "an unconscionable breakdown" occurred in the existing process in violation of his constitutional rights; rather, he asserts only that the state courts erred in deciding his claim. This, however, is insufficient for purposes of allowing the Fourth Amendment claim to proceed on federal habeas review. *See Capellan*, 975 F.2d at 71 ("Even if [petitioner] were correct in his allegation that the Appellate Division erroneously decided this issue, a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result.") (citing *Gates*, 568 F.2d at 839). The Second Circuit explained that reading *Stone v. Powell* as requiring the reviewing court "to focus on the correctness of the outcome resulting from the application of adequate state court corrective procedures, rather than on the existence and application of the corrective procedures themselves, . . . would be assuming, implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Capellan*, 975 F.2d at 71. According to the Second Circuit, *Stone v. Powell* "expressly discourage[d] [it] from making any such assumption." *Id.* (citing 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States."). Thus, to the extent that Molnar claims that the state courts erred in their ruling, this does not give this Court the authority to review his claims "since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process."

Case 1:03-cv-00493-VEB   Document 12   Filed 10/16/06   Page 7 of 7

*Id.* Accordingly, Molnar's Fourth Amendment claim is not cognizable in this Federal habeas proceeding and must be dismissed.

## CONCLUSION

For the reasons stated above, petitioner Alexander J. Molnar's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   October 16, 2006
         Buffalo, New York.